Frank L. Tobin CA Bar No. 166344
frank.tobin@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
4370 La Jolla Village Drive, Suite 990
San Diego, CA 92122
Telephone: 858-652-3100
Facsimile: 858-652-3101

Attorneys for Defendant FLOWERS BAKING CO. OF
HENDERSON, LLC

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SCHATZ an individual,<br><br>Plaintiff,<br><br>v.<br><br>FLOWERS BAKING CO. OF HENDERSON, LLC, a Nevada limited liability company; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No. 3:20-cv-00513-H-LL<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: August 9, 2021<br>Hearing Time: 10:30 a.m.<br>Courtroom: TBD<br><br>Complaint Filed: February 11, 2020<br>Trial Date: Not Set<br>District Judge: Hon. Marilyn L. Huff<br>Magistrate Judge: Hon. Linda Lopez |

47369308_4.docx

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ......................................................................................... 1

II. STATEMENT OF FACTS PERTINENT TO THE MOTION ................ 1

III. LEGAL STANDARD .............................................................................. 4

IV. SUMMARY JUDGMENT SHOULD BE GRANTED IN FULL ........... 4

    A.  Summary Judgment is appropriate on Plaintiff's disability discrimination claim because defendant had legitimate reasons for its actions and Plaintiff has no evidence of pretext. ............................................................................................. 4

    B.  Plaintiff cannot prove failure to accommodate because he could not perform the essential functions of the ASD role, and Defendant provided all reasonable accommodations. ............. 9

    C.  Defendant did engage in the interactive process. ......................... 12

    D.  Plaintiff's constructive termination claim fails because the conditions of Plaintiff's employment were not intolerable and his resignation was unreasonable. .......................................... 14

    E.  Plaintiff cannot prove by clear and convincing evidence that punitive damages are warranted. ........................................... 15

V.  CONCLUSION ...................................................................................... 16

47369308_4.docx

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chisolm v. 7-Eleven, Inc.*,
383 F.Supp.3d 1032 (S.D. Cal. 2019) ................................................................ 14

*Dep't of Fair Empl. & Hous. v. Lucent Techs., Inc.*,
642 F.3d 728 (9th Cir. 2011) ........................................................ 5, 7, 11, 12

*Field v. Am. Mortgage Exp. Corp.*,
No. C-09-5972 EMC, 2011 WL 3354344 (N.D. Cal. Aug. 2, 2011) ...................... 4

*Furtado v. State Personnel Bd.*,
212 Cal.App.4th 729 (2013) ............................................................................ 7

*Godwin v. Hunt Wesson, Inc.*,
150 F.3d 1217 (9th Cir. 1998) .......................................................................... 5

*Goldsmith v. Mayor and City Council of Baltimore*,
987 F.2d 1064 (1993) .................................................................................... 15

*Hanson v. Lucky Stores, Inc.*,
74 Cal.App.4th 215 (1999) ............................................................. 8, 10, 11, 12

*Kelly v. Wal Mart Stores, Inc.*,
291 F.Supp.3d 1145 (S.D. Cal. 2017) .......................................... 9, 12, 13

*King v. AC & R Advert.*,
65 F.3d 764-768-69 (9th Cir. 1995) ................................................................ 14

*Looney v. Super. Ct.*,
16 Cal.App.4th 521 (1993) ............................................................................ 15

*LVRC Holdings, LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009) .......................................................................... 4

*Martinez v. Costco Wholesale Corp.*,
481 F.Supp.3d 1076 (S.D. Cal. 2011) ........................................................... 5, 7

*Nadaf-Rahrov v. Nieman Marcus Group, Inc.*,
166 Cal.App.4th 952 (2008) .......................................................................... 13

47369308_4.docx

ii          Case No. 3:20-cv-00513-H-LL

*Nealy v. City of Santa Monica*,
    234 Cal.App.4th 359 (2015) ................................................................. 7, 9, 13

*Nissan Fire & Marine Ins. Co., Ltd v. Fritz Cos., Inc.*,
    210 F.3d 1099 (9th Cir. 2000) ................................................................. 4

*Raine v. City of Burbank*,
    135 Cal.App.4th 1215 (2006) ................................................................. 11

*Reader's Digest Assn., Inc. v. Super. Ct.*,
    37 Cal.3d 244 (1984) ................................................................. 15

*Sandell v. Taylor-Lustig, Inc.*,
    188 Cal.App.4th 297 (2010) ................................................................. 6

*Scotch v. Art Inst. Of California-Orange Cnty., Inc.*,
    173 Cal.App.4th 986 (2009) ................................................................. 14

*Shih v Warner Bros. Entertainment, Inc.*,
    2011 WL 7794082 (Cal. Super. Sep. 19, 2011) ................................................................. 15

*Taylor v. Trees, Inc.*,
    58 F.Supp.3d 1092 (E.D. Cal. 2014) ................................................................. 9

*Turner v. Anheuser-Busch, Inc.*,
    7 Cal.4th 1238 (1994) ................................................................. 14

*Wagner v. Sanders Assoc., Inc.*,
    638 F.Supp.742 (C.D. Cal. 1986) ................................................................. 14

*Watson v. Nationwide Ins. Co.*,
    823 F.2d 360 (9th Cir. 1987) ................................................................. 14

*Yeager v. Corrections Corp. of America*,
    944 F.Supp.2d 913 (E.D. Cal. 2013) ................................................................. 5

**Statutes**

Cal. Gov. Code § 12926(f) ................................................................. 9

Cal. Gov. Code § 12926(f)(1)(A) ................................................................. 10

47369308_4.docx

**Other Authorities**

Fed. R. Civ. Proc. 56 (a) ................................................................................................. 4

47369308_4.docx

# I.    INTRODUCTION

Defendant Flowers Baking Company of Henderson, LLC ("Defendant") hereby moves for summary judgment on Plaintiff David Schatz's ("Plaintiff") claims in their entirety. Alternatively, partial summary judgment should be entered in favor of Defendant on each of Plaintiff's causes of action, and his punitive damages claim.

Plaintiff claims disability discrimination, failure to accommodate, failure to engage in the interactive process and constructive discharge. Plaintiff also claims that punitive damages should be imposed against Defendant. However, the undisputed material facts show Plaintiff's claims are without merit. After Plaintiff had foot surgery, Defendant provided Plaintiff with the accommodation of leave for approximately 10 months, held his position open for over six months, offered him an available position when he was ready to come back, provided him the accommodation of leave when he went out again for a third surgery less than a month thereafter, and informed him of an open position for the type of position he previously occupied before he returned again. Ten days after returning from his third surgery Plaintiff quit to pursue a career in real estate.

The Defendant's actions were legally compliant. Summary judgment should be granted and judgment should be entered in favor of Defendant.

# II.    STATEMENT OF FACTS PERTINENT TO THE MOTION

Plaintiff started his employment with Flowers in 2012. After a foot surgery in November 2018, he went out on a medical leave of absence. At the time of this first leave of absence, Plaintiff worked as an Area Sales Director (ASD).

On January 9, 2019, Plaintiff provided medical documentation indicating that he would be able to return to work without limitations on February 11, 2019. (Exhibit ("Ex.") 1) However, that did not happen. In a subsequent doctor's note dated February 4, 2019, his return to work date was adjusted, and he was not able to return to work without limitations for another month on March 11, 2019. (Ex. 2) However, that did not happen either. On March 7, 2019, Mr. Schatz wrote to inquire whether he would

be able to return on a part-time basis versus full-time, unrestricted. (Ex. 3) Defendant responded that it would need to know what the doctor's restrictions were before it could determine whether Plaintiff's request could be accommodated. *Id.*

Thereafter, Plaintiff sent a doctor's note dated March 8, 2019. It stated that Plaintiff would not be permitted to return to work until March 11, 2019, and with limitations that included not being able to work for more than two hours a day, that he be provided "sedentary work only," and that these limitations would remain in place "until next evaluation" (though the date of the next evaluation was not provided). (Ex. 4)

Plaintiff's job as an ASD was full-time. It required him to be physically capable of movement to and within all sales and manufacturing facilities, other company related facilities, community facilities, and customer locations. (Ex. 5) It required the ability to frequently lift/carry products weighing approximately 25 pounds as well as the ability to push/pull up to 50 pounds regularly. *Id.* Accordingly, Plaintiff was obviously unable to perform the essential functions of his job even with accommodations given his doctor's restrictions. Defendant therefore determined that Plaintiff could not be accommodated and should remain on leave. This conclusion was communicated to Plaintiff. (Ex. 6.)

Plaintiff's condition did not change. Rather it became more uncertain and prolonged. On April 1, 2019, Plaintiff's doctor medically excused him from work effective May 29, 2019 for another surgery on his foot. The April 1, 2019 note projected his return to work to be more than five months away on September 25, 2019. (Ex. 7) A lot could happen in five months, so this seemed very uncertain, especially considering the multiple changes to Plaintiff's expected return. Even prior to the surgery, Plaintiff remained unable to perform the essential functions of the ASD position (or any other available position) even with reasonable accommodations. (Exs. 8 and 9) Defendant was in communication and interacted with Plaintiff throughout this time period. (Ex. 10)

47369308_4.docx

After the May 2019 surgery, Plaintiff's projected return to work date changed yet again. (Ex. 11) It was still months in the future and uncertain. *Id.* Defendant kept in contact with Plaintiff during this period and clearly communicated how his leave impacted his employment status. (Ex. 12)

During what would end up being Plaintiff's ten-month absence, Flowers made the business decision to fill the Plaintiff's ASD position after Plaintiff had been out of work for over six months. (Ex.13, Deposition of Lily Cass ("Cass Depo.") at 35:20-36:5.) This was communicated to Plaintiff. (Ex. 14) At that point, given the circumstances, it was not clear that Plaintiff would return in the foreseeable future or that following the leave, he would be able to perform his duties.

On September 25, 2019, when it seemed like Plaintiff may be medically cleared to return to work, Defendant communicated to Plaintiff his options upon return (Ex. 15) Upon Plaintiff's ultimate return to work on or about September 30 2019, Defendant accommodated him by searching for another position. As he had been informed months earlier, his ASD position was no longer available. Flowers offered, and Plaintiff accepted, a role as a Territory Operations Specialist (TOS). (Ex. 16)

After being back to work for less than a month, Plaintiff needed further medical treatment, was not able to work with or without restrictions, and took another leave of absence beginning on or about October 25, 2019. (Ex. 17) Plaintiff was permitted by his physician to return to work beginning November 4, 2019, with limitations of "light duty," "sedentary work only," and "no forceful pushing or pulling," among other restrictions. (Ex. 18) Because Plaintiff could not perform the essential functions of his job as a TOS and comply with these restrictions even with reasonable accommodations, he remained out on leave. (Ex. 19 and 20)

In late November, in anticipation of his return from leave, Flowers notified Plaintiff of an available ASD position in Los Angeles. (Ex. 21) Plaintiff declined. On December 9, 2019, Plaintiff was released to return to work, without restrictions, and returned to his TOS role. (Ex. 22) Ten days later, Plaintiff submitted a written

47369308_4.docx

voluntary resignation. (Ex. 23) He had decided to pursue a career in real estate. (Ex. 24, Deposition of David Schatz at 334:13-18.)

### III.   LEGAL STANDARD

Summary judgment should be granted in whole or in part when "there is no genuine dispute as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56 (a). A moving party may prevail on summary judgment either by negating an essential element of the opposing party's claim or by showing the opposing party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial. *See Nissan Fire & Marine Ins. Co., Ltd v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). "Where the plaintiff has the ultimate burden of proof, the defendant may prevail on a motion for summary judgment simply by pointing to the plaintiff's failure to make a showing sufficient to establish the existence of an element essential to the plaintiff's case." *Field v. Am. Mortgage Exp. Corp.*, No. C-09-5972 EMC, 2011 WL 3354344, at *3 (N.D. Cal. Aug. 2, 2011) [citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)] (internal quotations omitted).

To avoid summary judgment, the non-moving party must produce "evidence that is significantly probative or more than 'merely colorable' that a genuine issue of material fact exists for trial." *LVRC Holdings, LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009). Plaintiff cannot do so here.

### IV.   SUMMARY JUDGMENT SHOULD BE GRANTED IN FULL

**A.   Summary Judgment is appropriate on Plaintiff's disability discrimination claim because defendant had legitimate reasons for its actions and Plaintiff has no evidence of pretext.**

Plaintiff claims that Defendant discriminated against him by not providing light duty work and not holding his position open during the duration of his ten-month medical leave. However, Defendant had legitimate and non-discriminatory reasons for its actions and Plaintiff does not have any evidence that those reasons were pre-textual.

47369308_4.docx

A defendant is entitled to summary judgment on a disability discrimination claim if it can establish that there was a legitimate, nondiscriminatory reason for the alleged adverse employment action. *See Martinez v. Costco Wholesale Corp.*, 481 F.Supp.3d 1076, 1090 (S.D. Cal. 2011) [citing *Dep't of Fair Empl. & Hous. v. Lucent Techs., Inc.*, 642 F.3d 728, 745 (9th Cir. 2011) [hereinafter "*Lucent*"]. The ultimate issue is whether the employer acted with a motive to discriminate illegally; an employer's true reasons, if nondiscriminatory, need not have been wise or correct. *Id.* at 1091.

If the employer meets this burden, it then becomes incumbent on the employee to produce "'substantial responsive evidence' demonstrating the existence of a material triable controversy as to pretext or discriminatory animus on the part of the employer." *Martinez v. Costco Wholesale Corp.*, 481 F.Supp.3d at 1091 [citing *Serri v. Santa Clara Univ.*, 226 Cal.App.4th 830, 861 (2014)]. A plaintiff may establish pretext either by persuading the court directly, or, indirectly by showing that the employer's proffered explanation is unworthy of credence. *See Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998).

Indirect or circumstantial evidence of pretext must consist of "'specific' and 'substantial' facts to create a triable issue of pretext." *Yeager v. Corrections Corp. of America*, 944 F.Supp.2d 913, 928 (E.D. Cal. 2013). "'An employee in this situation cannot simply show the employer's decision was wrong, mistaken or unwise.' 'Rather, the employee must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence ... and hence infer that the employer did not act for the ... non-discriminatory reasons.'" *Lucent*, 642 F.3d at 746.

First, Defendant had a legitimate and nondiscriminatory reason for not providing Plaintiff part-time work when he was cleared to perform two hours of work a day with significant restrictions (no prolonged standing or walking, no kneeling or

squatting, no repetitive climbing, bending, or twisting, sedentary work only). (Ex. 4) Plaintiff's job as an ASD was full-time. It required him to be physically capable of movement to and within all sales and manufacturing facilities, other company related facilities, community facilities, and customer locations. (Ex. 5) It required the ability to frequently lift/carry products weighing approximately 25 pounds as well as the ability to push/pull up to 50 pounds regularly. *Id.* Between November, 2018 and until he was cleared to return to work in September, 2019, based on Plaintiff's own doctor's notes, Plaintiff could not perform the essential functions of his job (or any other available job) even with any reasonable accommodation. (See e.g., Exs. 1, 2, 4, 7, 8, 9 and 11) This is not disputed by Plaintiff, who, when communicating with Defendant about potential accommodations, asked if he would "be required to lift and spend most of my day on my feet as my position requires?" (Ex. 3) Additionally, Plaintiff told his doctor: "when I return to work I will be on my feet 90% of my days. Just though [*sic*] I should run all this by you."(Ex. 25)

The situation when Plaintiff went out for his third surgery was no different. Plaintiff's limitations between November 4 and November 24, included: "no prolonged standing or walking," "elevate injured extremity to decrease swelling," "no repetitive climbing, bending or twisting," "sedentary work only," "no forceful pushing or pulling," and "light duty." (Ex. 18) As of November 4, Plaintiff's job was as a TOS. The essential job functions of a TOS are similar to those of an ASD, in that they require the employee to be physically capable of movement to and within sales and manufacturing facilities, other company related facilities, and customer locations. TOS's are also required to be able to frequently lift and carry products weighing 25 pounds and to regularly push or pull up to 50 pounds. (Ex. 20) Again, Plaintiff was simply unable to perform the essential duties of the TOS job (or any other available job) in compliance with his medical restrictions.[1]

---

[1] That Plaintiff could not perform the essential functions of his job also prevents him from establishing a prima facie case for disability discrimination. *See Sandell v.*

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

47369308_4.docx

Plaintiff claims that Defendant discriminated against him by not allowing him to perform administrative work for two-hours a day with these restrictions. But the FEHA does not obligate the employer to excuse a disabled employee from the performance of essential functions of the position, nor is an employer required to reallocate essential functions to other employees. *See Nealy v. City of Santa Monica*, 234 Cal.App.4th 359, 375 (2015); *Lucent*, 642 F.3d at 744. An employer is not required to create a new job, move another employee, or promote the disabled employee to accommodate him or her. *Furtado v. State Personnel Bd.*, 212 Cal.App.4th 729, 745 (2013). And that is what offering Plaintiff a part-time light duty position would have required Defendant to do. "The ASD role is not a part-time position . . . It's impossible . . . [Defendant] did not have a program set up for someone to run that ASD position on a part-time salary." (Ex. 13, Cass Depo. 40:17-21, 44:16-18.) Defendant did "not have any part-time positions so [Defendant] would, in essence, be creating a new position for him." (Ex. 26, Deposition of Mia Rodriguez ("Rodriguez Depo.") at 39:7-9; *see also* Ex. 27 Deposition of Raul Olivas at 69:6-10 [Defendant does not have part time employees, and splitting ASD tasks among two employees would have created confusion.].) Accordingly, Defendant had legitimate, non-discriminatory reasons for keeping Plaintiff on leave until he was cleared to return in September, 2019, and then again for putting him on leave following his third surgery.

In addition, Plaintiff had legitimate, non-discriminatory reasons for reassigning his position to another employee while he was out on leave. Plaintiff's position was reassigned in June, 2019, after he had been on leave for over six months. (Ex. 14) At that point, Plaintiff's return date had changed several times, and thus there was no

---

*Taylor-Lustig, Inc.*, 188 Cal.App.4th 297, 310 (2010). Defendant is entitled to summary judgment as to disability discrimination on this additional basis. *Martinez v. Costco Wholesale Corp.*, 481 F.Supp.3d at 1090 [if plaintiff cannot establish one of the elements of the FEHA claim, employer is entitled to summary judgment].

Case No. 3:20-cv-00513-H-LL

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

certainty that he would return by his most recent projected return date in September, 2019, which was still another three months away. It was necessary for Defendant's business to fill the position so that somebody was actively running the position, and Defendant was not sure when Mr. Schatz was actually coming back. (Ex. 13, Cass Depo. at 35:20-36:5; Ex. 26, Rodriguez Depo. at 52:8-13 [business needs required someone to fill the role]) Human Resources felt that based on the ever-changing nature of Plaintiff's leave duration, there was no guarantee that Plaintiff would actually return in September. (Ex. 26, Rodriguez Depo. at 48:1-4, 56:20-57:4.) Once the person who had been filling in for Plaintiff was officially given Plaintiff's position, that person became eligible for bonuses. (Ex. 28, Deposition of Adrian Byers ("Byers Depo.") at 21:13-22:14.) The company "had no idea" when Plaintiff would return and was not willing to speculate. (Ex. 26, Rodriguez Depo. at 74:11-16). "Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected." *Hanson v. Lucky Stores, Inc.*, 74 Cal.App.4th 215, 226-227 (1999) [citing *Gantt v. Wilson Sporting Goods Co.,* 143 F.3d 1042, 1047 (1998)].[2]

When he returned, Plaintiff was offered what was available, which was the TOS position. (Ex. 16.) He accepted this position. *Id.* When he was returning from leave after his third surgery, Defendant let him know about another available ASD position, but Plaintiff chose not to pursue it. (Ex. 21)

The undisputed evidence is that Defendant had legitimate, non-discriminatory reasons for keeping Plaintiff on leave until he could work without restriction and filling his position in the interim. Plaintiff has no evidence of specific and substantial

---

[2] "[A] finite leave can be a reasonable accommodation under FEHA, provided it is likely that at the end of the leave, the employee would be able to perform his or her duties." *Hanson v. Lucky Stores, Inc.*, 74 Cal.App.4th at 226. By the time that Plaintiff's position was reassigned, his return dates without restrictions had changed several times and he was undergoing another surgery. Based on the circumstances, it was not likely that Defendant would be able to perform his duties if he returned by the projected return date, which was still months into the future.

47369308_4.docx

facts to create a triable issue of pretext. Clearly, Defendant did not discriminate against Plaintiff due to any disability. Rather, it was quite the opposite. Defendant provided Plaintiff with the accommodation of leave for approximately 10 months, held his position open for over six months, offered him an available position when he was ready to come back, provided him the accommodation of leave when he went out again for a third surgery less than a month thereafter, and informed him of an open ASD before he returned again. Summary judgment on Plaintiff's disability discrimination claim must be granted.

**B.** **Plaintiff cannot prove failure to accommodate because he could not perform the essential functions of the ASD role, and Defendant provided all reasonable accommodations.**

Plaintiff alleges that Defendant failed to reasonably accommodate him during his leave of absence, but this cause of action fails as a matter of law. "To make a *prima facie* case for failure to accommodate, a plaintiff must show (1) a FEHA recognized disability; (2) an ability to perform the essential functions of the job with or without accommodation; and (3) employer failure to provide a reasonable accommodation for the disability." *Kelly v. Wal Mart Stores, Inc.*, 291 F.Supp.3d 1145, 1151 (S.D. Cal. 2017); see also *Taylor v. Trees, Inc.*, 58 F.Supp.3d 1092, 1111 (E.D. Cal. 2014). Plaintiff cannot establish the second or third element of this claim.

First, Plaintiff could not perform the essential functions of his job during his leave. The FEHA defines an essential function as the fundamental job duties of the employment position. Cal. Gov. Code § 12926(f). "A job function may be considered essential for any of several reasons, including, but not limited to . . . the reason the position exists is to perform that function [and] the limited number of employees available among whom the performance of that job function can be distributed." *Nealy v. City of Santa Monica*, 234 Cal.App.4th at 373 [citing Cal. Gov. Code § 12926(f)(1)(A)]. Evidence of whether a function is essential can include the employer's judgment as to which functions are essential, job descriptions, and the

47369308_4.docx

amount of time spent on the job performing the function. Id. § (f)(2)(A)-(C).

Plaintiff's job as an ASD was full-time. It required him to be physically capable of movement to and within all sales and manufacturing facilities, other company related facilities, community facilities, and customer locations. (Ex. 5) It required the ability to frequently lift/carry products weighing approximately 25 pounds as well as the ability to push/pull up to 50 pounds regularly. *Id.* Between November, 2018 and until he was cleared to return to work in September, 2019, based on Plaintiff's own doctor's notes, Plaintiff could not perform the essential functions of his job even with any reasonable accommodation. (See e.g., Exs. 1, 2, 4, 7, 8, 9 and 11) This is not disputed by Plaintiff, who admits his job required him to be on his feet at least 90% of the time. (Ex. 26)

Additionally, Raul Olivas, who oversaw sales in the Southern California Region during the relevant time period, testified that the ASD's function is visit the market. (Ex. 27, Olivas Depo. at 63:22-64:7, 65:11-15.)

After being back to work for less than 30 days, Plaintiff needed further medical treatment, was not able to work with or without restrictions and took another leave of absence beginning on or about October 25, 2019. (Ex. 17) Plaintiff was then permitted by his physician to return to work beginning November 4, 2019, with limitations of "light duty," "sedentary work only," and "no forceful pushing or pulling," among other restrictions. (Ex. 18) Because Plaintiff could not perform the essential functions of his job as a TOS and comply with his restrictions even with reasonable accommodations, he remained out on leave. (Ex. 19 and 20)

Second, Plaintiff cannot show that Defendant failed to provide a reasonable accommodation. Given that the Plaintiff could not perform the essential duties of either the ASD or TOS position with or without reasonable accommodations, providing leaves to the Plaintiff while he was not medically cleared to go to work were reasonable accommodations. *See Hanson v. Lucky Stores, Inc.*, 74 Cal.App.4th at 226.

Moreover, Plaintiff's suggestion that as a reasonable accommodation he should

47369308_4.docx

have received part-time, light duty between March and May before his second surgery has no merit.[3] He essentially was asking Defendant to create a new position. That is not legally required. "California law is emphatic that an employer has no affirmative duty to create a new position to accommodate a disabled employee." *Raine v. City of Burbank*, 135 Cal.App.4th 1215, 1224 (2006). If the employer does not regularly do so, it is not required to create light-duty positions and does not have to exempt an employee from performing essential functions or to reallocate essential functions to other employees. *Id*. at 1225-1226; *Lucent*, 642 F.3d at 744.

Plaintiff's position was held open for over six months. During this time, Defendant "definitely took into consideration whether or not [it] could accommodate his restrictions." (Ex. 26, Rodriguez Depo. at 42:11-14.) It was filled for legitimate, non-discriminatory reasons, which included that his return was uncertain. (Ex. 13, Cass. Depo. at 35:20-36:5) It clearly was uncertain. Plaintiff's return dates and restrictions had changed several times and his most recent projected return date was still many months into the future. Based on the Defendants' circumstances, it was not likely that following the leave, Plaintiff would have been able to perform his duties. "Reasonable accommodation does not require the employer to wait indefinitely for an employee's medical condition to be corrected." *Hanson v. Lucky Stores, Inc.*, 74 Cal.App.4th at 226-227 [citing *Gantt v. Wilson Sporting Goods Co.,* 143 F.3d at 1047].

In *Hanson*, the plaintiff argued defendant Lucky Stores, Inc. failed to accommodate him after he took an initial leave for an on-the-job injury, which he then extended multiple times. 74 Cal.App.4th at 220. Lucky allowed plaintiff sixteen months of leave to recuperate, and when he returned with restrictions, tried to accommodate him by looking for and offering the only alternative, vacant position for which plaintiff qualified. *Id*. at 226-227. Plaintiff argued these were not reasonable

---

[3] The evidence shows that prior to March 11, 2019 and after the second surgery in May, Plaintiff was not able to return to work in any capacity, even with light duty restrictions, until September, 2019. (Exs. 4, 7 and 9)

Case No. 3:20-cv-00513-H-LL

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

47369308_4.docx

accommodations and proposed other possible accommodations such as modified equipment and a different shift. *Id*. at 227.

The *Hanson* court iterated that a finite leave of absence can be a reasonable accommodation and held Lucky's accommodations were sufficient under the law, also noting that an employee cannot make his employer provide a specific accommodation if another reasonable accommodation is instead provided. *Id*. at 228. Under these facts, Hanson raised no triable issue of material fact that Lucky provided him with no reasonable accommodation. *Id*. at 229. Just as in *Hanson*, Defendant here allowed Plaintiff to stay on leave despite multiple extensions, and offered him an alternative, vacant position upon his return.

Additionally, in *Lucent*, 642 F.3d at 744, the plaintiff alleged Lucent did not reasonably accommodate one of its employees. The defendant had considered whether plaintiff could perform his tasks given his restrictions or alternatively whether he could be placed in another position, and ultimately determined he could not. *Id*. The court held that the company "was not required to do more," and ruled for the defendant on the reasonable accommodation claim as a matter of law. *Id*. at 745.

Here, Defendant allowed Plaintiff a ten-month leave and did consider whether he could perform any other positions in the interim. Summary judgment on Plaintiff's failure to provide reasonable accommodations claim should be granted in favor of the Defendant.

## C. Defendant did engage in the interactive process.

Plaintiff claims that Defendant failed to engage in the interactive process, but he cannot sustain this claim. There is no requirement that the interactive process take any specific, ritualized form. *Kelly v. Wal Mart Stores, Inc.*, 291 F.Supp.3d at 1150 [citing *Nealy v. City of Santa Monica*, 234 Cal.App.4th at 379]. Rather, all that is necessary is that the employer engage in an informal, good faith dialogue with the employee for purposes of identifying any potential reasonable accommodations. *Id*.

To prevail on a claim for failure to engage in the interactive process, the

47369308_4.docx

employee must identify a reasonable accommodation that would have been available at the time the interactive process occurred. *Nealy v. City of Santa Monica*, 234 Cal.App.4th at 379; *see also Nadaf-Rahrov v. Nieman Marcus Group, Inc.*, 166 Cal.App.4th 952, 983 (2008) ["[T]he availability of a reasonable accommodation (i.e., a modification or adjustment to the work place that enables an employee to perform the essential functions of the position held or desired) is necessary to a section 12940(n) claim."] Thus Plaintiff bears the burden of proving a reasonable accommodation was possible and available at the time the interactive process occurred.

In *Kelly v. Wal Mart Stores, Inc.*, the court granted the defendant's motion for summary judgment as to the interactive process claim based upon a showing that it engaged in a "robust good faith dialogue from the time she requested accommodation all the way until the time it cleared her to return to work." 291 F.Supp.3d at 1151. Additionally, in *Nealy v. City of Santa Monica*, the court implied that the employer's meeting and discussion of restrictions, and providing of vacant positions, satisfied the requirements to interact in good faith. *See* 234 Cal.App.4th at 379-380.

The evidence shows that Defendant engaged in an informal, good faith dialogue with the Plaintiff for purposes of identifying any potential reasonable accommodations. Defendant communicated with Plaintiff throughout this process. (Exs. 1-12, 14-22, 30-32.) Summary judgment on this claim should be granted in Defendant's favor as a matter of law.

Plaintiff's claim for failure to engage in the interactive process fails for an additional reason. As set forth in the prior section, Plaintiff could not perform the essential functions of either the ASD or TOS positions while he was out on leave with or without reasonable accommodations. Accordingly, providing Plaintiff with leave during this period was a reasonable accommodation. There was no other reasonable accommodation that was required. "Because Plaintiff can point to no reasonable accommodation the interactive process should have produced, Plaintiff's claim fails

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

47369308_4.docx

as a matter of law." *Chisolm v. 7-Eleven, Inc.*, 383 F.Supp.3d 1032, 1058 (S.D. Cal. 2019).

**D.** **Plaintiff's constructive termination claim fails because the conditions of Plaintiff's employment were not intolerable and his resignation was unreasonable.**

Because Plaintiff cannot prove as a matter of law that Defendant discriminated against, failed to accommodate, or failed to interact with him, he necessarily cannot show that his working conditions were so intolerable that they forced him to resign.

But even if any of Plaintiff's causes of action survive, Plaintiff cannot prove he was constructively discharged from his position. Summary judgment against an employee on a constructive discharge claim is appropriate when the undisputed facts show the decision to resign was unreasonable as a matter of law. *Scotch v. Art Inst. Of California-Orange Cnty., Inc.*, 173 Cal.App.4th 986, 1022 (2009). "The conditions giving rise to the resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to serve his or her employer." *Turner v. Anheuser-Busch, Inc.*, 7 Cal.4th 1238, 1246 (1994). A constructive discharge occurs when, considering the totality of the circumstances, "a reasonable person in [the employee's] position would have felt that he was forced to quit because of intolerable and discriminatory working conditions." *Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987).

A demotion, even when accompanied by a reduction in pay, does not by itself trigger a constructive discharge. *Turner v. Anhueser-Busch, Inc.*, 7 Cal.4th at 1247; *see also King v. AC & R Advert.*, 65 F.3d 764-768-69 (9th Cir. 1995) [change in employment status, reduced responsibilities, and reduction in pay were insufficient to prove intolerable or aggravated work conditions]; *Wagner v. Sanders Assoc., Inc.*, 638 F.Supp.742, 745 (C.D. Cal. 1986) [the involuntary transfer of an employee to a position with lower pay does not constitute constructive discharge as a matter of law].

47369308_4.docx

An employer does not have to guarantee a stress free working environment, only one without unreasonably harsh conditions "in excess of those faced by [ ] co-workers." *Goldsmith v. Mayor and City Council of Baltimore*, 987 F.2d 1064, 1072 (1993).

Plaintiff also has no evidence to support this claim. In his letter of resignation, he cites the following reasons for resigning: 1) having to wake up early 5 days a week; and 2) a reduction in salary from his ASD position. (Ex. 23) As set forth above, change in employment status to include a reduction in pay does not constitute constructive discharge as a matter of law. Waking up early is not an "intolerable" or unreasonably harsh working condition," and is certainly not in excess of those faced by Plaintiff's co-workers. In fact, plaintiff himself woke up as early as 2:00am in his role as an ASD. (Ex. 27, Olivas Depo. at 58:3-23; Ex. 29.) Summary judgment should be granted on this claim.

**E.      Plaintiff cannot prove by clear and convincing evidence that punitive damages are warranted.**

Plaintiff's punitive damages claims under FEHA cannot survive summary judgment. With respect to FEHA, California courts have consistently held that summary judgment should be granted on a plaintiff's claim for punitive damages unless it appears that actual malice may be proven at trial by clear and convincing evidence. *See Looney v. Super. Ct.*, 16 Cal.App.4th 521 (1993); *Reader's Digest Assn., Inc. v. Super. Ct.*, 37 Cal.3d 244 (1984). Plaintiff cannot point to any evidence in the record to show Defendant (or any managing agent) acted with malice, oppression, or fraud to support an award of punitive damages under FEHA. *Shih v Warner Bros. Entertainment, Inc.*, 2011 WL 7794082 (Cal. Super. Sep. 19, 2011). There is no evidence, let alone clear and convincing evidence, Defendant engaged in conduct intended to cause injury to Plaintiff, engaged in cruel or despicable conduct that subjected Plaintiff to unjust hardship or intentionally misrepresented or concealed material facts with the intention of causing Plaintiff injury. *See id*. Summary judgment should be granted on Plaintiff's punitive damages claim.

47369308_4.docx

# V. **CONCLUSION**

Defendant respectfully requests this Court grant its Motion for Summary Judgment, or in the alternative, grant partial summary judgment on all of Plaintiff's causes of action and punitive damages claim in favor of Defendant and against Plaintiff.


DATED: June 17, 2021                    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: */s/ Frank L. Tobin*
    Frank L. Tobin
    Attorneys for Defendant FLOWERS
    BAKING CO. OF HENDERSON, LLC

47369308_4.docx

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the Notice of Electronic Filing.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on July 6, 2021.

By: */s/ Frank L. Tobin*
      Frank L. Tobin

47369308.4

DEFENDANT'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT, AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT