# EXHIBIT 13

```
 1                UNITED STATES DISTRICT COURT

 2                SOUTHERN DISTRICT OF CALIFORNIA

 3

 4   DAVID SCHATZ, an individual,    )   CERTIFIED COPY
                                     )
 5          Plaintiff,               )
                                     )
 6      vs.                          )   Case No.:
                                     )   3:20-cv-00513-H-LL
 7   FLOWERS BAKING CO. OF HENDERSON,)
     LLC, a Nevada limited liability )
 8   company; and DOES 1 through 50, )
     inclusive,                      )
 9                                   )
            Defendants.              )
10   _____)

11

12

13

14                       CONFIDENTIAL

15              DEPOSITION OF LILLIAN CASS

16             VIA ZOOM VIDEOCONFERENCING

17         TUESDAY, JANUARY 19, 2021, 10:04 A.M.

18

19

20

21

22     Reported by Debra D. Smalley, RMR, CSR No. 8513
                      Job No. 713037A
23

24

25
```

```
 1                UNITED STATES DISTRICT COURT
 2               SOUTHERN DISTRICT OF CALIFORNIA
 3
 4   DAVID SCHATZ, an individual,     )
                                      )
 5          Plaintiff,                )
                                      )
 6      vs.                           )   Case No.:
                                      ) 3:20-cv-00513-H-LL
 7   FLOWERS BAKING CO. OF HENDERSON, )
     LLC, a Nevada limited liability  )
 8   company; and DOES 1 through 50,  )
     inclusive,                       )
 9                                    )
            Defendants.                )
10   _____)
11
12
13
14
15
16
17
18
19
20
21
22        CONFIDENTIAL DEPOSITION OF LILLIAN CASS, taken
23   via Zoom videoconferencing, on Tuesday, January 19, 2021,
24   at 10:04 a.m., before Debra Smalley, Certified Shorthand
25   Reporter, in and for the State of California.
```

```
 1  APPEARANCES:

 2  For Plaintiff:

 3          THE LAW OFFICE OF MATT BLUM
            BY:  MATTHEW M. BLUM, ESQ.
 4          550 West C Street, Suite 960
            San Diego, California 92101
 5          860.271.6273  Fax 619.238.1351
            mblumlaw@gmail.com
 6
     For Defendants:
 7
            OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
 8          BY:  FRANK L. TOBIN, ESQ.
                 CODY J. COCANIG, ESQ.
 9          4370 La Jolla Village Drive, Suite 990
            San Diego, California 92122
10          858.652.3100  Fax 858.652.3101
            frank.tobin@ogletree.com
11          cody.cocanig@ogletree.com

12  Also Present:

13          DAVID SCHATZ
            ADAM STONE
14

15

16

17

18

19

20

21

22

23

24

25
```

1  Q    Okay.
2       MR. TOBIN:  Vague and ambiguous.
3  BY MR. BLUM:
4  Q    And when David Schatz went on -- are you aware
5  David Schatz went on medical leave?
6  A    Yes.
7  Q    And do you know how long he was out for?
8  A    I'm sorry, I don't have that exact number, the
9  time frame.
10 Q    Could you estimate?
11 A    Six months.
12 Q    So a similar length to that of Richard Tupen?
13 A    Correct.
14 Q    And when Mr. Schatz was ready to return to work,
15 was he given his job back?
16      MR. TOBIN:  Same objections.
17      Can you read back the question.
18      THE WITNESS:  Thank you.
19 BY MR. BLUM:
20 Q    When Mr. Schatz was ready to return to work in
21 2019 after his absence, was he given his job back as an
22 area sales director?
23 A    No.
24 Q    And why not?
25      MR. TOBIN:  Same objections.  Overbroad.

1  THE WITNESS: <u>We had to fill that position.</u>
2  <u>It was necessary for the business at that time that</u>
3  <u>we filled that position and had somebody there running</u>
4  <u>his position, and we were not sure when David Schatz</u>
5  <u>was going to actually come back.</u>
6  BY MR. BLUM:
7  Q    What was the difference between holding the
8  position open for Richard Tupen and holding the position
9  open for David Schatz?
10     MR. TOBIN: Foundation. Vague and ambiguous.
11     THE WITNESS: Richard Tupen was -- we knew when
12  Richard Tupen was going to come back.
13  BY MR. BLUM:
14     Q    How did you know?
15     A    Communication with -- with Richard Tupen.
16     Q    And so do you believe that David Schatz didn't
17  provide adequate communication about when he intended
18  to return?
19     MR. TOBIN: Same objections.
20     THE WITNESS: With multiple doctors' notes
21  continuously, we weren't sure exactly when Richard
22  Tupen -- we weren't certain when Richard Tupen was --
23  I'm sorry, when David Schatz was going to come back.
24  BY MR. BLUM:
25     Q    But isn't it the case that David Schatz

```
 1      Q    Okay.  And was anyone hired at that time --
 2  while David was out and while Adrian was filling in
 3  for David, was anyone hired at that time to fill in
 4  for Adrian?
 5      A    No.
 6      Q    So it was essentially the same team that was
 7  there before David went out on medical leave, minus
 8  David?
 9           MR. TOBIN:  Vague and ambiguous.
10           THE WITNESS:  Yes.
11  BY MR. BLUM:
12      Q    What would have been the harm in allowing
13  David to come back and work part time as an ASD until
14  he was healthy to work full time?
15           MR. TOBIN:  Objection.  Vague and ambiguous.
16  Calls for speculation.
17           THE WITNESS:  The ASD role is not a part-time
18  position.
19  BY MR. BLUM:
20      Q    Okay.  I understand, but --
21      A    It's impossible.
22      Q    But you had nobody covering for Adrian; right?
23  At that time?
24      A    Adrian was covering for Adrian.  Adrian was
25  doing both jobs.
```

1  not happen.
2  BY MR. BLUM:
3     Q   Okay.  But couldn't you have offered to pay
4  him based on the hours he was working?
5          MR. TOBIN:  Same objections.
6          THE WITNESS:  That is a salary position.  It's
7  not an hourly position.
8  BY MR. BLUM:
9     Q   Okay.  Did Flowers ever consider offering David
10 to work part time and paying him in accordance with the
11 hours he was working while he got better?
12         MR. TOBIN:  Foundation.  Calls for speculation.
13 Vague and ambiguous.  Overbroad.
14         THE WITNESS:  Everything gets talked through,
15 but that's just not possible.  That ASD position is a
16 salaried position with bonuses, and <u>we did not have a
17 program set up for someone to run that ASD position on
18 a part-time salary.</u>
19 BY MR. BLUM:
20    Q   So the reason, in your mind, that you didn't
21 allow David to come back and work part time was because
22 you didn't want to adjust his salary accordingly?
23         MR. TOBIN:  Same objections and may misstate
24 the testimony.
25         THE WITNESS:  I'm sorry, say the question again.