**EXHIBIT 27**

```
        UNITED STATES DISTRICT COURT

        SOUTHERN DISTRICT OF CALIFORNIA


DAVID SCHATZ, an individual,      )   CERTIFIED COPY
                                  )
           Plaintiff,             )
                                  )
     vs.                          )   Case No. 20cv513-H-LL
                                  )
FLOWERS BAKING CO. OF HENDERSON,  )
LLC, and DOES 1-50,               )
                                  )
           Defendants.            )
_____)




        CONFIDENTIAL DEPOSITION OF RAUL OLIVAS

              THURSDAY, JANUARY 7, 2021

              APPEARING REMOTELY FROM

              SAN DIEGO COUNTY, CALIFORNIA






    Reported by Elana Zucconi, CSR No. 9651, RPR, CRR

                  Job No. 707498A
```

```
 1                UNITED STATES DISTRICT COURT
 2              SOUTHERN DISTRICT OF CALIFORNIA
 3
 4  DAVID SCHATZ, an individual,       )
                                       )
 5          Plaintiff,                 )
                                       )
 6      vs.                            ) Case No. 20cv513-H-LL
                                       )
 7  FLOWERS BAKING CO. OF HENDERSON,   )
    LLC, and DOES 1-50,                )
 8                                     )
            Defendants.                )
 9  _____)
10
11
12
13
14
15
16
17
18
19
20
21     CONFIDENTIAL DEPOSITION OF RAUL OLIVAS, taken at
22  550 West C Street, Suite 700, San Diego, California, on
23  Thursday, January 7, 2021 at 10:09 a.m., before Elana
24  Zucconi, Certified Shorthand Reporter, in and for the
25  State of California.
```

APPEARANCES:


For Plaintiff:

    THE LAW OFFICE OF MATT BLUM
    MATT BLUM, ESQ.
    550 West C Street, Suite 960
    San Diego, California  92101
    860.271.6273
    619.238.1351 Fax
    mblumlaw@gmail.com


For Plaintiff:

    THE LAW OFFICES OF ADAM O. STONE
    ADAM O. STONE, ESQ.  (VIA VIDEOCONFERENCE)
    411 Camino Del Rio South, Suite 300
    San Diego, California  92108
    619.839.9452
    aostonelaw@gmail.com


For Defendant Flowers Baking Co. of Henderson, LLC:

    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
    FRANK L. TOBIN, ESQ. (VIA VIDEOCONFERENCE)
    CODY J. COCANIG, ESQ.  (VIA VIDEOCONFERENCE)
    4370 La Jolla Village Drive, Suite 990
    San Diego, California  92122
    858.652.3100
    858.652.3101
    frank.tobin@ogletree.com
    cody.cocanig@ogletree.com


ALSO PRESENT:  DAVID SCHATZ  (VIA VIDEOCONFERENCE)

```
 1   BY MR. BLUM:
 2       Q    Okay.  Tell me about that.
 3       A    Well, there's a -- there are several different
 4   functions that we do that require different start times.
 5   Sometimes it's -- it's early, 2:00 a.m., to be on the
 6   dock with distributors and splitters.  There's different
 7   scenarios that would create different start times.
 8       Q    Okay.  So sometimes it was as early as
 9   2:00 a.m.?
10       A    From what I remember, yeah.
11       Q    And what would --
12       A    I don't know if Dave specifically started at
13   that time, but there were times that we asked our
14   employees to be on the docks at 2:00 a.m.
15       Q    Your TOS employees?
16       A    And ASDs.
17       Q    Okay.  So what was the time -- that was my next
18   question, is what time would ASDs generally report to
19   work within your Southern California division?
20       A    Kind of the same thing.  Depending on what was
21   happening, they could start as early as 2:00 a.m.  More
22   often, business as normal, they didn't start until
23   5:00 a.m.
24       Q    Okay.  So the common start time for an ASD was
25   around 5:00 a.m.
```

```
 1              MR. TOBIN:  Same objections.
 2              THE WITNESS:  Depends what they are doing
 3    during those -- that time.
 4    BY MR. BLUM:
 5       Q    Okay.  Do ASDs perform any administrative
 6    duties?
 7       A    Very little.
 8       Q    Do ASDs make calls to clients and customers?
 9              MR. TOBIN:  Same objections.
10              THE WITNESS:  Sometimes.
11    BY MR. BLUM:
12       Q    Okay.  So if David could have spent even just
13    two hours a day making calls to clients in the summer of
14    2019 when you were short-staffed and business was
15    booming, would that have been helpful?
16              MR. TOBIN:  Objection; vague and ambiguous,
17    foundation, calls for speculation, incomplete
18    hypothetical and it is argumentative.
19              THE WITNESS:  No.  Our ASDs never call
20    customers for two hours in a day.
21    BY MR. BLUM:
22       Q    How much time do they spend a day calling
23    customers?
24              MR. TOBIN:  Foundation, speculation.
25              THE WITNESS:  Depends on the day.  I would say
```

1  maybe -- maybe one call a day, maybe two.  Their
2  function is to be out at the customer -- with the
3  customer.
4  BY MR. BLUM:
5      Q    Okay.  Why is that?
6      A    Because our business doesn't exist at the
7  building.  Our business is out in the field.
8      Q    Okay.  Those are customers in a lot -- those
9  are supermarkets, right?
10     A    Correct.
11     Q    And a lot of those customers' relationships are
12 developed over time, right?
13     A    Yes.
14     Q    So David had an outstanding relationship with
15 many of the supermarkets that he worked with, correct?
16     A    Yes.
17          MR. TOBIN:  (Inaudible.)
18 BY MR. BLUM:
19     Q    What?
20          MR. TOBIN:  Foundation.
21          THE WITNESS:  Yes.
22 BY MR. BLUM:
23     Q    Okay.  So what would the harm be in David
24 simply communicating with those customers over the
25 phone?

1     MR. TOBIN: Objection; vague and ambiguous,
2  foundation, calls for speculation, incomplete
3  hypothetical and it's (inaudible) -- and it is
4  argumentative.
5     THE WITNESS: I guess I am just not
6  understanding how that communication would take effect
7  by phone and the purpose of that.
8  BY MR. BLUM:
9     Q   Well, what would be the purpose of going and
10 speaking to them in person?
11    A   To visit the market, to check the inventory
12 levels, to visit and let the customer know that we are
13 there, we are present and hopefully at that same time to
14 try to recognize an area in the store that we could put
15 up a display to promote our sales.
16    Q   Okay. So you don't feel like over the phone
17 David could ask a client how their inventory was, ask
18 them how they were doing and ask them if there was a
19 place in the store where you guys could put up a
20 display?
21    MR. TOBIN: Same objections.
22    THE WITNESS: I have never heard of that
23 happening before in our business.
24 BY MR. BLUM:
25    Q   Have you ever tried?

```
 1   and the company?
 2           MR. TOBIN:  Same objections.
 3           THE WITNESS:  I'm not sure.
 4   BY MR. BLUM:
 5       Q   Why are you not sure?
 6       A   I guess my -- my not sureness is just creating
 7   more confusion because now you are -- you have a person
 8   there on a limited capacity conveying some things and an
 9   ASD still there trying to convey other things and I
10   just -- I think that would create a lot of confusion.
11       Q   So you don't think it would be helpful to have
12   David who had -- how long had David been an ASD?
13       A   I don't know.  My estimate would be since 2013,
14   but I don't know that for sure.
15       Q   Okay.  So you estimate at least five years?
16       A   Yes.
17       Q   And David is the one that built the
18   relationships with customers in his area; is that
19   correct?
20       A   Yes.
21       Q   So you don't think it would be helpful to have
22   David come in in a limited capacity in the summer of
23   '19 and communicate with those customers that he had
24   built relationships with?
25           MR. TOBIN:  Same objections.
```