# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID SCHATZ, an individual,<br><br>Plaintiff,<br><br>v.<br><br>FLOWERS BAKING CO. OF HENDERSON, LLC, a Nevada limited liability company; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 3:20-cv-00513-H-LL<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 36, 42.] |

On July 6, 2021, Defendant Flowers Baking Co. of Henderson LLC ("Defendant") filed a motion for summary judgment. (Doc. No. 42.) Plaintiff David Schatz ("Plaintiff") filed a response in opposition to Defendant's motion on July 26, 2021. (Doc. No. 43.) Defendant filed a reply on August 2, 2021. (Doc. No. 51.) The Court held a hearing on the matter on August 16, 2021. (Doc. No. 61.) Matthew Blum and Adam Stone appeared for Plaintiff, and Francis Tobin appeared for Defendant. (Id.) For the following reasons, the Court denies Defendant's motion for summary judgment.

## Background

This case involves an employment dispute between Plaintiff and Defendant, a large producer of baked goods. (Doc. No. 1, Ex. A ¶¶ 8-36.) Plaintiff began working for Defendant in 2012. (Doc. No. 42, Def's Mot. for Summ. J. at 1.) In 2018, he worked as an area sales director. (Doc. No. 43, Pl's Notice of Lodgment ("NOL"), Ex. 3 at 22-23.) At the time, Defendant employed eight area sales directors in Southern California, (id.), each acting as a liaison between Defendant's business and its customers and distributors for a given geographic area, (Doc. No. 42, Tobin Decl., Ex. 5). Defendant also employed two territory operations specialists to assist the eight area sales directors as needed. (Pl's NOL, Ex. 3 at 21.)

Plaintiff oversaw the San Diego area, working out of Defendant's Chula Vista warehouse. (Id. at 23.) Plaintiff's duties involved performing administrative and sales work at the warehouse and travelling to customers' businesses. (Id. at 26-28; see also Tobin Decl., Ex. 5 (company job description).) Defendant also flew Plaintiff around the country to train other area sales directors. (Pl's NOL, Ex. 9 at 332.) And although area sales directors sometimes performed manual labor, according to Plaintiff, the territory operations specialists did most of the heavy lifting. (Id. at 115.)

In late 2018, Plaintiff took a leave of absence to undergo foot surgery. (See Pl's NOL, Ex. 1 at 2-3.) Plaintiff initially told Defendant that he could return to work on February 11, 2019, but that date later changed to March 11, 2019. (Tobin Decl., Exs. 1-2.) Plaintiff's doctor also recommended that he return in March on a limited, part time basis. (Tobin Decl., Ex. 4.) Plaintiff sent Defendant a doctor's note stating that he could perform sedentary work for up to two hours per day until his next evaluation. (Id.) Mia Rodriguez, one of Defendant's human resources representatives, informed Plaintiff that Defendant could not accommodate his restrictions and that he would need to stay on leave. (Tobin Decl., Ex. 6 at 1.) Lillian Cass, Defendant's regional vice president for Southern California and Las Vegas, explained in her deposition that Plaintiff could not be accommodated because Defendant does not offer part time positions. (Pl's NOL, Ex. 4 at 27, 32-33.)

Plaintiff remained on leave until September 2019, when he was able to return to work without restrictions. (Tobin Decl., Ex. 26 at 56.) During his absence, Plaintiff periodically updated Defendant on his condition. (See Pl's NOL, Ex. 3 at 54-55.) He provided Defendant with several doctor's notes, each indicating that he would be able to return to his position in late September. (Pl's NOL, Ex. 7.) He also repeatedly notified Defendant that he intended to return to work after his recovery. (See, e.g., Tobin Decl., Ex. 10 at 1.)

Nevertheless, while Plaintiff was on leave, Defendant gave his area sales director position to Adrian Byers, a temporary operations specialist who was covering Plaintiff's duties at the time. (Tobin Decl., Ex. 14 at 1-2.) Rodriguez and Cass both stated that Defendant needed to fill Plaintiff's position because of uncertainties regarding his return date. (Id. (Rodriguez); Tobin Decl., Ex. 13 at 36 (Cass).) But these concerns were not communicated to Plaintiff, nor was Plaintiff informed that his job could be forfeited while he was on leave. (See Tobin Decl., Ex. 14 at 2-3.) In fact, Plaintiff only found out that he lost his position when he asked why he could no longer access his company e-mail. (Id.) Additionally, Byers stated in his deposition that he had no objections to returning to his old temporary operations specialist position when Plaintiff returned. (Pl's NOL, Ex. 6 at 24.)

As expected, Plaintiff returned to work without restrictions in September 2019. (See Tobin Decl., Ex. 16.) He resumed work as a temporary operations specialist, rather than as an area sales director. (Pl's NOL, Ex. 9 at 33.) His new role paid approximately $20 per hour and required him to report to work at 3:00 am five days a week. (Pl's NOL, Ex. 9 at 33.) Around a month after Plaintiff's return, he took another medical leave of absence until December 9, 2019. (See Tobin Decl., Exs. 17, 22.) A few days after he returned from this second leave of absence, Plaintiff resigned because he could not "continue to endure the conditions of [his] current job." (Tobin Decl., Ex. 23.)

On February 11, 2020, Plaintiff filed a lawsuit in the Superior Court for the County of San Diego. (Doc. No. 1, Ex. A.) Plaintiff asserted claims against Defendant for failure to provide a reasonable accommodation, disability discrimination, failure to engage in the

interactive process, and constructive discharge in violation of public policy. (Id. ¶¶ 37-77.) Plaintiff also included a prayer for punitive damages. (Id. at 14.) On March 18, 2020, Defendant removed the case. (Doc. No. 1.) Defendant now moves for summary judgment on each of Plaintiff's claims. (Doc. No. 42.)

## Discussion

I. **Summary Judgment Standard**

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fortune Dynamic, 618 F.3d at 1031 (internal quotation marks and citations omitted); accord Anderson, 477 U.S. at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case that the nonmoving party bears the burden of proving at trial. Id. at 322-23; Jones v. Williams, 791 F.3d 1023, 1030 (9th Cir. 2015).

Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv.,

809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)); accord Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007). To carry this burden, the non-moving party "may not rest upon mere allegation or denials of his pleadings." Anderson, 477 U.S. at 256; see also Behrens v. Pelletier, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings."). Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 256.

When ruling on a summary judgment motion, the court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). The court should not weigh the evidence or make credibility determinations. See Anderson, 477 U.S. at 255. Further, the Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3).

## II. Reasonable Accommodation

The Court first turns to Plaintiff's reasonable accommodation claim. Plaintiff argues that Defendant unreasonably denied his request for a modified work schedule, forcing him to take extended medical leave. (Doc. No. 43, Pl's Opp. at 13.) Additionally, Plaintiff argues that Defendant failed to reasonably accommodate him while he remained on leave by giving his position away to another employee. (Id.)

The California Fair Employment and Housing Act ("FEHA") obligates employers to make reasonable accommodations for disabled employees. Cal. Gov't Code. § 12940(m). To succeed on a failure to accommodate claim, the employee must prove that (1) he or she is disabled and (2) could perform the essential functions of the job with a reasonable accommodation, and (3) the employer failed to provide a reasonable accommodation. Scotch v. Art Inst. of California, 93 Cal. Rptr. 3d 338, 358 (Ct. App. 2009). The FEHA provides several examples of accommodations that may be reasonable depending on the circumstances, such as "[j]ob restructuring, part-time or modified work schedules, reassignment to a vacant position," and so on. Cal. Gov't Code § 12926(p).

Generally, the reasonableness of a specific accommodation is a question of fact. <u>Hanson v. Lucky Stores, Inc.</u>, 87 Cal. Rptr. 2d 487, 496 (Ct. App. 1999).

Here, the record contains questions of material fact, precluding summary judgment. For example, Defendant argues that it reasonably filled Plaintiff's position while he remained on leave. (Doc. No. 42, Def's Mot. for Summ. J. at 11.) As Defendant reasons, the several changes to Plaintiff's return date and the extended length of his leave made it uncertain when or if Plaintiff would return, forcing its hand. (<u>Id.</u>) Defendant then cites to cases for the proposition that indefinite medical leave is not a reasonable accommodation. <u>Id.</u> (citing <u>Hanson</u>, 87 Cal. Rptr. 2d at 494). But "the mere fact that a medical leave has been repeatedly extended does not necessarily establish that it would continue indefinitely." <u>Nadaf-Rahrov v. Neiman Marcus Grp., Inc.</u>, 83 Cal. Rptr. 3d 190, 222 (Ct. App. 2008). And although Plaintiff's return date changed initially, Plaintiff sent several doctors notes to Defendant after these changes, each stating that he would return without restrictions in September 2019. (Doc. No. 43, Pl's NOL, Ex. 7.) Further, the record does not indicate that Plaintiff's intention to return to work waivered. Plaintiff reiterated several times that he intended to resume working for Defendant when healthy. (<u>See, e.g.</u>, Doc. No. 42, Tobin Decl., Ex. 10 at 1.) Because of these conflicts in the evidence, the Court denies Defendant's motion for summary judgment as to Plaintiff's reasonable accommodation claim.

### III. Disability Discrimination

FEHA also prohibits employers from discriminating against employees based on the employee's "physical disability." Cal. Gov't Code § 12940(a). To establish a prima facie case for disability discrimination under FEHA, an employee must show that (1) he or she is disabled, (2) is qualified to perform the essential functions of the position with or without reasonable accommodation, and (3) was subjected to an "adverse employment action" because of the disability. <u>Faust v. California Portland Cement Co.</u>, 58 Cal. Rptr. 3d 729, 745 (Ct. App. 2007).

On summary judgment, the employer bears the burden of demonstrating that the

employee could not establish a prima facie case or that it acted for "legitimate, nondiscriminatory reason[s]." Dep't of Fair Emp. & Hous. v. Lucent Techs., Inc., 642 F.3d 728, 745 (9th Cir. 2011) (quoting Avila v. Cont'l Airlines, Inc., 82 Cal. Rptr. 3d 440, 449 (Ct. App. 2008)). "If the employer meets its initial burden, the burden shifts to the employee to 'demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual, or that the employer acted with a discriminatory animus . . . .'" Serri v. Santa Clara Univ., 172 Cal. Rptr. 3d 732, 759 (Ct. App. 2014) (quoting Cucuzza v. City of Santa Clara, 128 Cal. Rptr. 2d 660 (Ct. App. 2002)). An employee can establish pretext by showing that "the employer's proffered explanation is unworthy of credence" such that a reasonable juror could "infer that the employer did not act for . . . non-discriminatory reasons." Lucent, 642 F.3d at 746 (omission in original) (citations omitted).

Here, triable issues also exist on Plaintiff's discrimination claim. Returning to the previous example, Defendant argues that it reassigned Plaintiff's position to another employee for a legitimate, nondiscriminatory reason: it did not know if or when Plaintiff would return. (Doc. No. 42, Def's Mot. for Summ. J. at 7-8.) But Plaintiff gave Defendant several doctors notes stating that he would return by September 2019 without restriction. (Doc. No. 43, Pl's NOL, Ex. 7.) Additionally, Plaintiff submits evidence suggesting that Defendant did not need to fill Plaintiff's position when it did. During Plaintiff's absence, Defendant tasked Byers, a temporary operations specialist, to cover Plaintiff's duties. (Doc. No. 42, Tobin Decl., Ex. 15 at 36.) Defendant then promoted Byers to Plaintiff's area sales director position. (Id.) But Defendant did not hire or assign anyone to take over for Byers's old role. (Id. at 37.) And critically, Byers testified that he would have had no objection to returning to his old operations specialist role when Plaintiff returned. (Pl's NOL, Ex. 6 at 24.) Considering the conflicting evidence, a jury should determine whether Defendant's nondiscriminatory explanations are credible. The Court therefore denies Defendant's motion for summary judgment on Plaintiff's disability discrimination claim.

//

## IV. The Interactive Process

The Court next turns to Plaintiff's interactive process claim. The FEHA obliges employers "to engage in a timely, good faith, interactive process with the employee . . . to determine effective reasonable accommodations." Cal. Gov't Code § 12940(n). The obligation is continuous and "requires communication and good-faith exploration of possible accommodations between employers and individual employees with the goal of identify[ing] an accommodation that allows the employee to perform the job effectively." Lucent, 642 F.3d at 742-43 (brackets in original) (quoting Nadaf–Rahrov, 166 Cal. App. 4th at 985). Whether an employer satisfies its interactive process obligations is generally a question of fact. Wilson v. Cty. of Orange, 87 Cal. Rptr. 3d 439, 446 (Ct. App. 2009).

The Court sees no reason to diverge from this general rule here. On the one hand, Defendant submits e-mails evidencing that it communicated with Plaintiff while he was on leave and testimony from Rodriguez, a human resources administrator, who stated that Defendant "definitely took into consideration whether or not [it] could accommodate his restrictions." (Doc. No. 51, Def's Reply at 5 n.4 (brackets in original) (citing exhibits).) But Plaintiff submits contradictory evidence. For example, Defendant gave Plaintiff's position to another employee because it was concerned about whether Plaintiff would actually return in September 2019. (Tobin Decl., Ex. 14 at 1-2.) But Defendant never communicated these concerns to Plaintiff, nor did Defendant tell Plaintiff that his position could be reassigned in the first place. (See id. at 2-3.) Plaintiff only figured out that Defendant gave his position to another employee when he inquired about e-mail issues. (Id.) Based on the conflicting evidence, the Court denies Defendant's motion for summary judgment on Plaintiff's interactive process claim. See Salgado v. Iqvia, Inc., 459 F. Supp. 3d 1318, 1335 (S.D. Cal. 2020) (granting summary judgment in favor of employee on interactive process claim in part because employer had concerns that employee would not return and took adverse action without further exploring the concerns or communicating them to the employee).

//

## V. Constructive Discharge in Violation of Public Policy

Plaintiff also alleges that Defendant constructively terminated him in violation of public policy. (Doc. No. 1, Ex. A ¶¶ 71-77.) "Constructive discharge occurs when the employer's conduct effectively forces an employee to resign." Turner v. Anheuser-Busch, Inc., 876 P.2d 1022, 1025 (Cal. 1994). This usually involves a showing of "unusually aggravated" or "continuous" adverse working conditions. Id. at 1027 (internal quotation marks omitted). California courts measure constructive discharge objectively based on the totality of the circumstances, asking "whether a reasonable person faced with the allegedly intolerable employer actions or conditions of employment would have no reasonable alternative except to quit." Id. To determine if a reasonable employee would feel forced to resign, courts consider the following factors:

> demotion; reduction in salary; reduction in job responsibilities; reassignment to menial or degrading work; reassignment to work under a younger or more junior supervisor; badgering, harassment or humiliation by the employer calculated to encourage the employee to resign; offers of early retirement or continued employment on terms less favorable than the employee's former status.

Chin, et al., California Practice Guide: Employment Litigation ¶ 4:441 (The Rutter Group, Dec. 2020 Update).

Defendant submits that Plaintiff cannot establish that his working conditions were intolerable. (Doc. No. 42, Def's Mot. for Summ. J. at 14.) As Defendant argues, Plaintiff only quit because his new job paid less and forced him to wake up early five days a week, which alone cannot establish constructive discharge. (Id. at 14-15 (citations omitted).) Additionally, Defendant contends that waking up early is not an unreasonably harsh working condition. (Id. at 15.)[1]

---

[1] In reply, Defendant also argues that Plaintiff's decision to continue to work defeats his constructive discharge claim. (Doc. No. 51, Def's Reply at 9.) But Plaintiff only actually worked for just over a month after he returned from leave in September 2019. (See Doc. No. 42, Tobin Decl., Exs. 16-17, 22-23.) Further, although "[t]he length of time [Plaintiff] remained on the job is relevant in determining the severity of the impact of the working conditions" it "does not as a matter of law prevent [him] from proceeding" on his claim. Brome v. California Highway Patrol, 258 Cal. Rptr. 3d 83, 96 (Ct. App. 2020)

1    But Plaintiff relies on more than just his demotion and early wakeups to support his
2    claims; essentially, he argues that Defendant ran him through the wringer to force him to
3    quit. (Doc. No. 43, Pl's Opp. at 23-24.) For example, Plaintiff submits evidence that
4    Defendant denied his requests for a temporary modified work schedule while he was
5    recovering from a foot injury, forcing him to take extended leave. (Doc. No. 42, Tobin
6    Decl., Ex. 6 at 1.) While Plaintiff was on leave, Defendant gave his salaried area sales
7    director position to another employee. (Tobin Decl., Ex. 14 at 1-2.) Defendant did not
8    advise Plaintiff that his job would be in jeopardy while he remained on leave, nor did
9    Defendant inform him when it gave Byers his position. (See id. at 2-4.) Rodriguez only
10   told Plaintiff about the change when he asked for help accessing company e-mail. (Id. at
11   2-3.) Additionally, Rodriguez told Plaintiff that his position was given to Byers because
12   they were unsure when Plaintiff would return, but nobody communicated these concerns
13   to him until after the fact. (Id. at 1-2.) When Plaintiff returned to work, Defendant assigned
14   Plaintiff, someone who they used to fly around the country to train other areas sales
15   directors, to work in the lesser territory operations specialist role under Byers, his former
16   subordinate. (Tobin Decl. Ex. 16; Doc. No. 43, Pl's NOL, Ex. 9 at 332.) In that role,
17   Plaintiff made only twenty dollars per hour and needed to report to work at 3:00 am. (Pl's
18   NOL, Ex. 9 at 333.) As Plaintiff explained in his deposition, this made it very difficult for
19   him to provide for his family, much less spend any meaningful time with them. (Id. at 332-
20   33.) In light of the parties' conflicting evidence regarding the severity of Plaintiff's
21   working conditions, the Court denies Defendant's motion for summary judgment on this
22   claim.

## VI. Punitive Damages

Defendant's motion also asks the Court to summarily adjudicate Plaintiff's prayer for punitive damages. (Doc. No. 42, Def's Mot. for Summ. J. at 15.) But because triable

---

(citation omitted) (stating reasonable jury could find working conditions intolerable despite employee remaining on job for years where, as here, working conditions became intolerable over time).

issues of fact exist on Plaintiff's FEHA and constructive discharge claims, summary adjudication of Plaintiff's prayer for punitive damages is premature. See, e.g., Martinez v. Costco Wholesale Corp., 481 F. Supp. 3d 1076, 1104 (S.D. Cal. 2020); ("Because the Court denies summary judgment on the claims for disability discrimination, retaliation, failure to prevent discrimination and failure to engage in the interactive process, the Court also DENIES summary judgment on Plaintiff's prayer for punitive damages as premature."); Patton v. Hanassab, No. 14-CV-1489-AJB (WVG), 2016 WL 4507022, at *8 (S.D. Cal. Aug. 29, 2016) ("[A]s Plaintiff has presented sufficient evidence to withstand summary judgment on its claims, it would be premature to foreclose Plaintiff's opportunity to seek punitive damages."). The Court therefore denies Defendant's motion for summary judgment on the issue of punitive damages.

## Conclusion

For the foregoing reasons, the Court denies Defendant's motion for summary judgment in its entirety.

**IT IS SO ORDERED.**

DATED: August 17, 2021

MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT